**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

G&G CLOSED CIRCUIT EVENTS, LLC, §
AS BROADCAST LICENSEE OF THE §
DECEMBER 19, 2020 SAUL ALVAREZ §               SA-23-CV-01533-XR
V. CALLUM SMITH CHAMPIONSHIP §
FIGHT PROGRAM; §
            *Plaintiff* §
 §
-vs- §
 §
TKO RAM LLC, RUSBEL E. RAMIREZ, §
            *Defendants* §

## ORDER

On this date, the Court considered Plaintiff G&G Closed Circuit Events, LLC's ("G&G or "Plaintiff") Motion for Summary Judgment (ECF No. 30) against Defendants TKO Ram LLC ("TKO") and Rusbel E. Ramirez ("Ramirez") (collectively, "Defendants"). Upon careful consideration, the Court issues the following order.

## BACKGROUND

Plaintiff held exclusive commercial distribution rights to the broadcast of the December 19, 2020 Saul Alvarez v. Callum Smith Championship Fight Program, including commentary and undercard or preliminary bouts (the "Event"). ECF No. 30-1, Ex. A-1 (Licensing Agreement). The Event broadcast originated via satellite and was electronically coded or "scrambled" before being retransmitted to cable systems and satellite television companies via satellite signal. ECF No. 30-1, Ex. A (Aff. of Thomas P. Riley) at ¶ 5.

Plaintiff entered into agreements with various commercial establishments in Texas that allowed them, for a fee, to exhibit the Event to their patrons. *See id.* at ¶ 3. The sublicense fee for the Event was based on the capacity of the establishment. For example, if a commercial

1

establishment had a maximum fire code occupancy of 100 persons, the commercial sublicense fee for the Event would have been $900.00. ECF No. 30-1, Ex. A ¶ 6; *id.*, Ex. A-3 (Rate Card).

In order to safeguard against the unauthorized interception or receipt of the Event, the interstate satellite transmission of the Event was electronically coded or scrambled and was not available to or intended for the use of the general public. *Id.*, Ex. A ¶ 5. If a commercial establishment was authorized by Plaintiff to receive the respective Event, the establishment was provided with the electronic decoding equipment and the satellite coordinates necessary to receive the signal or the establishment's cable or satellite provider would be notified to unscramble the reception, depending upon the establishment's equipment and provider. *Id.*

On the night of the Event, Noel Gonzalez, Jr., an auditor working on Plaintiff's behalf, entered Drop Zone Bar & Grill (the "Establishment"), a commercial establishment located at 1804 E. Carson St. in San Antonio, Texas 78208. *Id.*, Ex. A-2 ("Gonzalez Aff.") at 1. Gonzalez averred that there was no cover charge, and the Event was being telecast to patrons inside on multiple televisions. *Id.* During the Event, Gonzalez saw approximately 10 patrons inside of the Establishment, which he estimated had a capacity of approximately 50 people. *Id.*

Plaintiff filed this case on December 15, 2023, seeking monetary relief up to $110,000 pursuant to 47 U.S.C. § 605, or, alternatively, up to $60,000 pursuant to 47 U.S.C. § 553. ECF No. 1 at 5. Plaintiff named as Defendants: (1) TKO Ram LLC, under which the Establishment operates, and (2) Rusbel E. Ramirez, an officer and director of TKO, who supervised the business activities of the Establishment and had a financial interest in its business operations. ECF No. 30-1, Ex. B (public records from Texas Secretary of State and Texas Comptroller establishing ownership and permit holders for the Establishment).

Defendants did not receive permission from Plaintiff, did not enter into an agreement with Plaintiff, and did not pay Plaintiff a licensing fee in order to show the Event at the Establishment. *See id.*, Ex. A ¶¶ 7–8.

Plaintiff avers that Defendants could not have obtained the transmission of the Event had Defendants not undertaken specific wrongful actions to intercept, receive, and/or exhibit the telecast of the Event. *See id.* ¶ 9.

On January 24, 2024, Defendants filed an answer through counsel, denying the allegations in G&G's complaint. ECF No. 9. Defendants have failed to produce any evidence supporting their denials.

On September 3, 2024, the Court granted an unopposed motion to withdraw as attorney that was filed by the Defendants' counsel. On the same date, the Court ordered TKO to obtain counsel by no later than October 3, 2024. ECF No. 29. TKO failed to respond.

On December 16, 2024, Plaintiff filed a motion for summary judgment. ECF No. 30. On December 17, 2024, the Court issued a show cause order to both Defendants, again ordering TKO to obtain counsel and ordering Ramirez to advise the Court whether he intended to proceed with or without counsel. ECF No. 31. Neither Defendant responded. The Court previously warned TKO that failure to obtain counsel could result in the striking of pleadings and entry of default. ECF Nos. 29, 31. The Court will now address Plaintiff's motion for summary judgment, and will construe the motion for summary judgment as a motion for default against Defendant TKO.

## **DISCUSSION**

### I. Legal Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R.

CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en banc*, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In

making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

The reviewing court may not simply grant summary judgment by default when faced with no filed opposition to the motion. *Bradley v. Chevron U.S.A., Inc.*, No. Civ. A. 204CV092J, 2004 WL 2847463, at *1 (N.D. Tex. Dec. 10, 2004) (citing *Eversley v. MBank of Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). But the Court may in such situation find the statement of facts in the motion for summary judgment to be undisputed. Still, the Court must deny the motion for summary judgment if the moving party fails to meet its burden. *See id*.

Rule 55 of the Federal Rules of Civil Procedure governs the process by which a party may obtain a default judgment. *See* FED. R. CIV. P. 55(a). In the Fifth Circuit, there are three procedural steps: (1) default; (2) entry of default; and (3) entry of default judgment. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). "A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *Id.* (emphasis omitted). Once a party defaults, the clerk must enter the default if the default is established "by affidavit or otherwise." FED. R. CIV. P. 55(a). After the default is entered, the plaintiff may apply "for a judgment based on such default." *Brown*, 84 F.3d at

## II. Analysis

### A.  Summary Judgment

The Act prohibits the "[u]nauthorized interception or receipt or assistance in intercepting or receiving [cable] service" communications. 47 U.S.C. § 553(a). "Cable service" is defined as a "one-way transmission to subscribers of (i) video programming, or (ii) other programming service," and any necessary interactions allowing subscribers access to such service. 47 U.S.C. § 522(6). The Fifth Circuit, as a matter of first impression in *J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, joined the majority of circuits in holding the proscriptions of § 553 apply to interceptions or receipts of wire communications, and § 605 applies when radio communications are received or intercepted. 751 F.3d 346, 352 (5th Cir. 2014).

Plaintiff seeks damages under § 605 or alternatively under § 553. However, it expressly states that "[t]he transmission of the Event originated via satellite." ECF No. 30-1, Ex. A ¶ 5. Although it is unclear whether Defendants used internet, cable, or satellite to exhibit the Event, it is plausible—and even likely, given the Establishment was equipped with satellite equipment, *see* ECF No. 30-1, Ex. A-2 (photos)—that Defendants received the Event via satellite. "And when 'there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous.'" *J & J Sports Prods., Inc. v. Enola Invs., L.L.C.*, 795 F. App'x 313, 315 (5th Cir. 2020) (quoting *Justiss Oil Co. v. Kerr-McGee Ref. Corp.*, 75 F.3d 1057, 1062 (5th Cir. 1996)). Thus, the Court will assess liability and damages based on violations alleged under § 605, "as the statute 'does not require identification of the precise means used to accomplish the piracy of a satellite signal.'" *Id.* at 315 (quoting *J&J Sports Prods., Inc. v. Brady*, 672 F. App'x 798, 802–03 (10th Cir. 2016)).

The Communications Act is a strict liability statute. To establish liability, Plaintiff is required to prove two elements: (1) the Event was shown in Defendants' Establishment; and (2) the exhibition of the Event at Defendants' Establishment was not authorized by Plaintiff. 47 U.S.C.

§ 605; *G&G Closed Circuit Events, LLC v. Cisneros*, No. 5:15-CV-32-DAE, 2016 WL 1322485, at *2 (W.D. Tex. Apr. 1, 2016).

In his answer, Defendant Ramirez denies the allegations in G&G's complaint. ECF No. 9. Defendant has failed to produce any evidence supporting their denials.

Based on the undisputed facts, Plaintiff has established by a preponderance of the evidence that the Event was shown at Defendant's Establishment without Plaintiff's authorization. *See* Ex. A ¶¶ 7–8 ; Ex. A-2.

Due to the strict liability nature of the Communications Act, officers, directors, members, and managers are held individually liable for the Communications Act violations under the theory of vicarious liability. Courts allow an individual to be held liable for a company's violation of § 605 if the individual had (1) the right and ability to supervise the unauthorized activities of the establishment in those activities and (2) an obvious and direct financial interest in those activities. *Joe Hand Promotions, Inc. v. 152 Bronx, L.P.*, 11 F. Supp. 3d 747, 753 (S.D. Tex. 2014).

Here, there is no genuine dispute as to whether Ramirez can be held individually liable for the violations of the Communications Act. Ramirez was the only officer, director, member and/or manager of TKO. *See* ECF No. 30-1, Ex. B. Ramirez had the right and ability to supervise the business activities of the Establishment and had a financial interest in the activities of the Establishment on the date of the Event. *152 Bronx, L.P.*, 11 F. Supp. 3d at 753. Thus, Ramirez is individually liable for the violations of the Communications Act.

Before addressing damages, the Court will assess whether Default Judgment should be granted as to Defendant TKO.

**B. Default Judgment**

In the absence of a Motion for Default Judgment the Court will construe G&G's motion for summary judgment against TKO as a motion for default judgment. *See Truist Bank v. Cuzzcast Gourmet Gelato, LLC*, No. 3:20-CV-3607-X, 2022 WL 19699, at *1 (N.D. Tex. Jan. 3, 2022) (construing a motion for summary judgment as a motion for default judgment); *see also United States v. Star-Tel, Inc.*, No. 03-3904, 2005 WL 2810701, at *2 (S.D. Tex. Oct. 26, 2005) (treating a motion for summary judgment as a motion for default judgment because the defendant was in default).

To be sure, default judgment is a "drastic remedy not favored by the Federal Rules and resorted to by courts only in extreme situations." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). Nonetheless, it is an appropriate remedy when a party disobeys a court order. *See United States v. $49,000 Currency*, 330 F.3d 371, 376–78 (5th Cir. 2003) (affirming the district court's sanction of striking a party's pleading and rendering default judgment when a party disobeyed a court order).

### 1. TKO's Default and Court's Entry of Default

It is well established that a limited liability company is a fictional legal person who can only be represented by licensed counsel. *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201–02. Likewise, "the rule is well established that a corporation can appear in a court of record only by an attorney at law." *Southwest Express Co. v. Interstate Com. Comm'n,* 670 F.2d 53, 55 (5th Cir. 1982). When a corporate defendant fails to obey orders to obtain counsel after being warned of the consequences of failing to do so, the district court may properly strike its defenses or enter default. *Memon v. Allied Domecq DSR*, 385 F.3d 871, 874 (5th Cir. 2004); *Donovan v. Rd. Rangers Country Junction, Inc.*, 736 F.2d 1004, 1005 (5th Cir. 1984) ("Gordon declined to hire counsel to represent the corporation so the district court properly struck the defenses of the corporation."); *Hamilton v. EnerSafe, Inc.*, No. SA:15-CV-965-DAE, 2018 WL 7822066, at *1 (W.D. Tex. Mar.

6, 2018) ("When a corporation declines to hire counsel to represent it, the Court may strike its pleadings or enter default."); *Future World Elecs., LLC v. Over Drive Mktg., LLC*, No. 3:12-CV-2124-B, 2013 WL 5925089, at \*2 (N.D. Tex. Nov. 5, 2013) (finding it appropriate to strike answer and enter default judgment after instructing LLC to obtain counsel and giving warning).

The Court twice warned TKO that limited liability companies are not permitted to proceed *pro se* in federal court and it must retain new counsel. ECF Nos. 29, 31. Despite the Court's explicit orders and warnings, TKO failed to notify the Court as to whether it has obtained counsel. Because the Court formally ordered TKO to retain counsel and it has not done so, the Court finds it appropriate to strike TKO's Answer. The Court further finds it is appropriate to direct the Clerk to enter default against TKO.

The Court will now assess whether default judgment is appropriate. In considering any motion for default judgment, a court must examine jurisdiction, liability, and damages. *Rabin v. McClain*, 881 F. Supp. 2d 758, 763 (W.D. Tex. 2012).

**2. Jurisdiction**

"[W]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Turnakovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

Plaintiff's action was brought in federal court, asserting claims involving the Federal Communications Act of 1934 (the "Act"), pursuant to 47 U.S.C. §§ 553 and 605. Thus, Plaintiff asserts claims involving a federal question, allowing this Court to exercise federal question subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

The Court also has personal jurisdiction over the parties to this case, as Plaintiff has properly effected service of process on TKO in accordance with Texas law. "[S]ervice of process . . . initiates a defendant's obligations in a civil suit[.]" *Jefferson v. Delgado Cmty. Coll. Charity Sch. Of Nursing*, 602 F. App'x 595, 598 (5th Cir. 2015) (per curiam). The affidavit of service indicates that TKO was served through its registered agent on February 2, 2024, approximately six weeks after the complaint was filed, *see* ECF No. 5 at 2, and G&G alleges that the events giving rise to this case occurred in Texas. ECF No. 1 at 1–2.

### 3. Liability

Six factors inform whether default judgment is warranted: "[(1)] whether material issues of fact are at issue, [(2)] whether there has been substantial prejudice, [(3)] whether the grounds for default are clearly established, [(4)] whether the default was caused by a good-faith mistake or excusable neglect, [(5)] the harshness of a default judgment, and [(6)] whether the court would think itself obliged to set aside the default upon the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (numeration added).

Under the *Lindsey* factors, default judgment against TKO is proper. First, there are no disputed material issues of fact. This Court twice ordered TKO to obtain counsel, but it has failed to do so (*see* ECF Nos. 29, 31), and the Court here (*supra* section II.B.1.) ordered that its Answer be stricken. *See K.M.A., Inc. v. Gen. Motors Acceptance Corp.*, 652 F.2d 398, 399 (5th Cir. 1981) ("The law is clear that a corporation as a fictional legal person can only be represented by licensed counsel."). Plaintiff's allegations are therefore deemed admitted because there is no operative "responsive pleading." *See* FED. R. CIV. P. 8(b)(6) ("An allegation ... is admitted if a responsive pleading is required and the allegation is not denied.") Second, TKO cannot claim default judgment would substantially prejudice it because the Court warned TKO of its need to retain

counsel, and its subsequent inaction "has ground the adversary process to a halt." *Joe Hand Promotions, Inc v. Fusion Hookah, LLC.*, 2020 WL 6876208, at *2 (W.D. Tex. Nov. 23, 2020). Third, TKO's failure to respond to the Court's orders, "clearly established" grounds for default. These circumstances foreclose any basis for claiming that TKO's default resulted from a good-faith mistake or excusable neglect, which would result in any entry of default judgment, to be unduly harsh, the fourth and fifth factors. Nor is the Court aware of any facts that give rise to "good cause" to set aside default if challenged by TKO.

### 4. Sufficient Basis in the Pleadings

As discussed *supra* (section II.A.), Plaintiff's pleadings are sufficient to support liability. Accordingly, the Court concludes that Plaintiff is entitled to a default judgment as to liability on its claims against Defendant TKO.

The Court must next determine what form of relief, if any, the plaintiff should receive.

### C. Damages

In its Motion for Summary Judgment, G&G asks the Court to award it statutory damages under 47 U.S.C. § 605, attorney's fees, costs, and pre- and post-judgment interest. ECF No. 30 at 20.

While damages are not normally awarded in instances of default without an evidentiary hearing (*see United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)), a hearing is unnecessary where the amount claimed can be determined with mathematical calculation by reference to the pleadings and supporting documents. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). Here the Court has determined Defendant Ramirez is individually liable for violations of the Act and the Plaintiff has sufficiently pled allegations to find default judgment against Defendant TKO. Accordingly, the Court will assess damages.

Section 605 contains two damage provisions relevant to this case. First, statutory damages are prescribed "for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just[.]" 47 U.S.C. § 605(e)(3)(C)(i)(II). Second, if violations were "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," the Court may increase damages "whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section." 47 U.S.C. § 605(e)(3)(C)(ii).

### 1.   Section 605(e)(3)(C)(i)(II)

Plaintiff seeks $10,000 in statutory damages premised on lost licensing fees, and compensation for being deprived of the value, benefits, and profits that may have been realized, but for Defendants' piracy of the Event. ECF No. 30 ¶ 16. Notably, lost licensing fees are a mere baseline in assessing statutory damages. *See Entm't by J & J, Inc. v. Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002) (explaining how damages of mere broadcast cost would not incentivize statute compliance). This Court has previously assessed damages by looking to the number of patrons present during the unauthorized broadcast. *See J&J Sports Prods., Inc. v. Tejada*, No. 5-13-CV-01020-XR, 2014 WL 869218, at *2 (W.D. Tex. Mar. 4, 2014) (assessing baseline statutory damages using number of patrons established by affidavit). This "per-patron" approach is not uncommon in previous § 605 cases. *See, e.g.*, *Al-Waha Enters.*, 219 F. Supp. 2d at 776 (stating "the per-patron approach is an appropriate starting point for calculating damages").

Here, Plaintiff submitted the affidavit of Noel Gonzalez, Jr., an auditor who was present at the Establishment on the date of the Event, which states that there were approximately 10 patrons present and viewing the Event on multiple televisions. ECF No. 30-1, Ex. A-2. Gonzalez further observed that the capacity of the Establishment was approximately 50 people. *Id.* According to the

submitted "Rate Card" (used to calculate sub-licensing fees based on venue capacity), a commercial establishment with a venue range of 1–100 people would be charged $900.00 for the legal right to broadcast the Event. ECF No. 30-1, Ex. A-3.

This Court has previously found trebling the amount a defendant would have been required to pay to legally license the event to be a just assessment of damages. *See, e.g., J&J Sports Prods., Inc. v. Tejada,* No. 5:13-CV-1010-XR, 2014 WL 869218, at *2 (W.D. Tex. Mar. 4, 2014) (awarding three times the amount of the legal sub-license fee). This multiplier accounts for "money saved by not complying with the law, as well as any profits made from food and drink sales associated with customers who stayed and watched the fight." *Joe Hand Promotions, Inc. v. Garcia,* 546 F. Supp. 2d 383, 386 (W.D. Tex. 2008). In this case, a trebling of the $900.00 fee is $2,700.00. This amount is appropriate given the small number of patrons (10), the limited capacity (50), and the lack of a cover charge, which collectively suggest modest commercial gain, but warrant deterrence beyond the base fee to account for the unauthorized broadcast in an urban area.

## 2. Section 605(e)(3)(C)(ii)

Section 605 provides for an enhanced award of statutory damages by an amount up to $100,000 if the violation is determined to have been "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). G&G seeks enhanced damages in the amount of $50,000, which is five times its requested statutory damages award of $10,000.00. *See* ECF No. 30 at 20.

The Plaintiff has presented evidence that the Event was electronically scrambled and coded. ECF No. 30-1, Ex. A ¶ 5. Defendants intercepted and received the transmission and broadcast it to the patrons of Defendants' Establishment and advertised that they would be broadcasting the Event. *See id.*, Ex. A-2; Ex. C; Ex. E. Because of the extreme unlikelihood that

Defendants could have "innocently" accessed the broadcast of the Event, it is apparent that Defendants specifically and willfully acted to illegally intercept the transmissions of the Event for commercial advantage. *See J&J Sports Prods., Inc. v. El 33, LLC*, No. EP-11-CV-519-KC, 2013 WL 164521, at *5 (W.D. Tex. Jan. 14, 2013). As other courts have found, "signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Joe Hand Promotions, Inc. v. Garcia*, 546 F. Supp. 2d 383, 385 (W.D. Tex. 2008) (quoting *Time Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999). Accordingly, the Court finds that Defendants' violation of 605(a) was "committed willfully and for purposes of direct or indirect commercial advantage."

Though Plaintiff seeks $50,000 in additional damages for this willful violation, this amount is excessive in light of the relatively small size of the venue (max capacity fifty), no cover charge to enter, the relatively few patrons in attendance (ten), and the number of screens (three) on which the Event was displayed, especially considering that Defendants could have legally licensed the fight for up to 100 patrons for only $900.00. Therefore, the Court finds damages for a willful violation in the amount of $2,700 appropriate.

### 3. Attorney's Fees and Costs

The Act mandates a prevailing plaintiff be awarded costs and attorney's fees. See 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff submitted an affidavit from its counsel, explaining his fees and seeking one-third of actual damages. Though this Court has previously awarded attorney's fees based on the lodestar method, *see Tejada*, 2014 WL 869218, at *2, a review of the case law indicates that a one-third contingent fee is appropriate and reasonable in a case such as this one. *J&J Sports Prods., Inc. v. Casita Guanajuato, Inc.*, No. A-13-CA-824-SS, 2014 WL 1092177, at

*3 (W.D. Tex. Mar. 19, 2014). Accordingly, the Court awards $1,798.00 in attorney's fees. The Court declines to award attorney's fees for potential post-trial and appellate services.

### 4. Pre-judgment Interest

G&G in its Complaint, sought pre-judgment interest, but omitted pre-judgment interest in its Motion for Summary Judgment. *See* ECF No. 1 at 5; ECF No. 30 at 20. The Court considers the issue waived. *See Mays v. JP & Sons, Inc.*, 178 F. App'x 378, 382 (5th Cir. 2006) (failure to seek pre-judgment interest in pre-trial order constituted waiver); *Herrera v. Tri-State Kitchen and Bath, Inc.*, No. 14-cv-1695 ARR MDG, 2015 WL 1529653, at *13 (E.D.N.Y. Mar. 31, 2015) (failure to seek pre-judgment interest in motion for default judgment constituted waiver); *Innovations, Designs & Interiors, Inc. v. S. Guaranty Ins. Co.*, No. 1:99-cv185-D-A, 2002 WL 1611498, at *1 (N.D. Miss. June 13, 2002) (same).

### 5. Post-judgment Interest

Plaintiff requests, and the Court awards, post-judgment interest. ECF No. 30 at 20. Federal law applies to the award of post-judgment interest. *See Travelers ins. V. Liljeberg Enters., Inc.*, 7 F.3d 1203, 1209 (5th Cir. 1993) (citing *Chapman & Cole v. Itel Container Int'l B.V.*, 865 F.2d 676, 689 (5th Cir. 1989)). Federal law provides that "[i]nterest shall be allowed on any monetary judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Therefore, G&G shall receive post-judgment interest on the entire amount of the final judgment as calculated pursuant to § 1961.

## <u>CONCLUSION</u>

For the reasons set forth above, the Court **GRANTS** G&G's motion for summary judgment (ECF No. 30) against Defendant Rusbel Ramirez.

It is **ORDERED** that Defendant TKO Ram LLC's Answer (ECF No. 9) is stricken. The Clerk is **DIRECTED** to **ENTER DEFAULT** as to TKO Ram LLC .

It is **FURTHER ORDERED** Plaintiff's motion for summary judgment, construed as a motion for default judgment, as to Defendant TKO Ram LLC is **GRANTED**.

Plaintiff is hereby awarded the following assessed against TKO and Ramirez owed jointly and severally:

Statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II) in the amount of $2,700.00;

Statutory damages under 47 U.S.C. § 605(e)(3)(C)(ii) in the amount of $2,700.00;

Reasonable attorney's fees in the amount of $1,798.00; and

Post-judgment interest at 4.33 percent on the amounts awarded from the date of final judgment until paid.

Plaintiff is awarded costs and shall file a bill of costs in the form required by the Clerk of the Court, with supporting documentation within fourteen days of the entry of the Judgment. *See* Local Rule 54.

A separate judgment in favor of Plaintiff shall issue in accordance with Rule 58.

It is so **ORDERED**.

**SIGNED** this 20th day of August, 2025.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE